No. 83-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

PATRICIA D. JOHNSON, as Personal
Representative of the Estate of
TERRY L. JOHNSON, and as Guardian
Ad Litem for SUSAN P. and ROBIN
J. JOHNSON, Minors,

Plaintiffs and Appellants,

-vs-

MARIAS RIVER ELECTRIC COOPERATIVE,
INC., a public utility; and EDWIN
VANDER PAS, d/b/a VANDER PAS OIL
CO.,

Defendants and Respondents.

APPEAL FROM:  District Court of the Ninth Judicial District,
In and for the County of Toole,
The Honorable Bernard W. Thomas, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Terry N. Trieweiler argued, Whitefish, Montana

For Respondents:

Robert Emmons argued for Vander Pas, Great Falls,
Montana
Edward W. Borer argued for Marias River, Great Falls,
Montana

Constitutional Challenge:
Hon. Mike Greely, Attorney General, Helena, Montana

Submitted:  March 5, 1984

Decided:  August 14, 1984

Filed:  ꞰUG 1984

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The issue in this case is whether minor children of a decedent who is survived by his spouse are proper parties in a wrongful death action after the enactment of sections 72-1-103(18), and 72-2-202, MCA, of the Uniform Probate Code.

We hold that the issue of a decedent who is survived by his spouse may maintain an action for damages under section 27-1-513, MCA.

The conflict in the statutes arises in this way: The wrongful death statute, section 27-1-513, MCA, provides that in case of the wrongful death of an adult "his heirs, or personal representatives" may maintain an action for damages against the person responsible. The Uniform Probate Code now defines "heirs" as those who are entitled to the property of the decedent under intestate succession. Section 72-1-103(18), MCA. Under the intestate succession statutes, a surviving spouse who is the parent of all of the surviving issue of the decedent is entitled to all of the decedent's estate. Section 72-2-202, MCA. Thus, under the Uniform Probate Code, a decedent's minor children, whose other parent survives the decedent are not "heirs" as defined by the Probate Code.

Patricia D. Johnson appeals a summary judgment entered in District Court for the Ninth Judicial District, Toole County, granting summary judgment in favor of the defendants as to the wrongful death claims of the minor children, Susan P. Johnson and Robin J. Johnson. Since the summary judgment did not dispose of the entire case, it was certified for purposes of appeal by the District Court in accordance with Rule 54(b), M.R.Civ.P.

On August 14, 1981, Terry Johnson was electrocuted while working on a metal building owned by Edwin Vander Pas, with an electric power drill, manufactured by Rockwell International. Marias River Electric Cooperative, Inc. was the supplier of electricity.

Terry and Patricia Johnson had five children during the course of their marriage. At Terry's death, three of the children were minors. Patricia, as personal representative of Terry's estate and as guardian ad litem sought damages in a wrongful death action for herself and the two youngest children, Susan and Robin. Separate actions have been filed for the remaining children, now held in abeyance.

Rockwell International was granted summary judgment, which is not appealed. The remaining defendants filed motions for summary judgment as to the claims of the minor children on the basis that they are not "heirs" of Terry Johnson for the purposes of a wrongful death action. The District Court agreed and granted summary judgment as to the minor children. This appeal ensued.

The right of action for the wrongful death of an adult is found in section 27-1-513, MCA:

> "When the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person."

The language of section 27-1-513, MCA, just quoted, has been a part of our statutory law since 1877. (The first enactment of the provision is found in Ch. 1, Title II, § 14, at 42, Laws of Montana (1877).) An additional sentence in the original enactment, providing that damages in a wrongful

death action may be given as under all the circumstances of the case may be just, is now found in section 27-1-323, MCA.

In all the period of time since 1877 that the wrongful death statute for an adult decedent has been in effect, until the adoption of the Uniform Probate Code in 1974, our statutes relating to intestate succession have provided that at least some share of an intestate decedent's property would go to his living issue. See for example, the last such succession statute, section 91-403, R.C.M. 1947, repealed Ch. 365, § 2, Laws of Montana (1974).

The Uniform Probate Code became effective on July 1, 1975 (section 72-1-107(1), MCA). The provisions of that code for intestacy are in pertinent part these:

"72-2-202. Share of spouse. The intestate share of the surviving spouse is:

"(1) . . . if there are surviving issue, all of whom are issue of the surviving spouse also, the entire remaining estate;. . ."

"72-2-203. Share of heirs other than surviving spouse. The part of the intestate estate not passing to the surviving spouse under 72-2-202, or the entire intestate estate if there is no surviving spouse, passes as follows:

"(1) To the issue of the decedent;. . ."

Until the adoption of the Uniform Probate Code, no Montana statute, except one to which we will advert later, attempted to define the meaning of the word "heirs." The Uniform Probate Code defined the term, using the common-law connotation:

"'Heirs' means those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." Section 72-1-103(18), MCA.

It is the contention of the respondents here that after the adoption of the Uniform Probate Code and pursuant thereto, a widow is the sole "heir" of her deceased husband

- 4 -

if all of the husband's children are also children of the surviving wife; that it must be presumed that the legislature intended to change the existing law when it amended the law pertaining to intestate succession; and that if the legislature did not intend to change who had the right to bring a wrongful death action, it would have been "extremely easy to have amended" the wrongful death act accordingly; that to interpret the term "heirs" so as to include here the surviving minor children of Terry Johnson would give the term an expanded meaning not now found in the statute.

The single Montana statute that did fix a meaning of the word "heirs" prior to the Uniform Probate Code was section 67-1520, R.C.M. 1947. It provided that where the words "heirs" or "issue" appeared in certain remainders, "such words must be taken to mean successors or issue living at the death of the testator." The statute survives as section 70-1-518, MCA. It has not received judicial interpretation by us.

We in the majority must start with the admission that a wrongful death action is purely a statutory creation. It is true also that recently in Versland v. Caron Transport (Mont. 1983), 671 P.2d 583, 588, 40 St.Rep. 1681, 1687, we held that the nonadopted minor stepchildren of the decedent have no claim for the wrongful death of their step-parent. We relied in Versland on the provisions of the Uniform Probate Code to demonstrate that nonadopted stepchildren could not be "heirs" within the meaning of section 27-1-513, MCA, since they could never succeed to the property of the decedent under the statutes of intestate succession. We are now urged by the respondents to take the next step, and to declare that by reason of the provisions of the Uniform Probate Code, living

issue of a decedent have no right of recovery for the wrongful death of their parent, if at the time of the death the other parent was married to the decedent and survived him.

We keep in mind that the damages which are recoverable in a wrongful death action are not assets to the estate of the decedent, and are not distributed as a part of the decedent's estate. See discussion in Swanson v. Champion International Corporation (1982), 197 Mont. 509, 518, 646 P.2d 1166, 1171. We said in Champion:

> "When a wrongful death action is prosecuted, the damages are returned by general verdict, covering all of the heirs involved. The jury is not given the duty of ascribing so much to one heir and so much to another. Rather, the trial court, after the verdict, is given the task of allocating the money damages among the heirs. State ex rel. Carroll v. District Court (1961), 139 Mont. 367, 372, 364 P.2d 739, 741. The distribution to the heirs is not controlled by the decedent's will or by the laws of intestate succession."

It is a rule of statutory construction that to make tenable the claim that an earlier statute was repealed by a later one, the two must be plainly and irreconcilably repugnant to or in conflict with each other, must relate to the same subject, and must have the same object in view. State ex rel. Helena Allied Printing Council v. Mitchell (1937), 105 Mont. 326, 74 P.2d 417. Applying that rule of statutory construction to whether the right of the children to bring an action in this case was in effect repealed or voided by the legislature, we do not find that the wrongful death statutes and the Uniform Probate Code relate to the same subject, or have the same object in view. The legislature, in adopting and continuing the wrongful death statute had in mind the salutary objective of providing pecuniary damages to those who suffer detriment by reason of

- 6 -

a wrongful death. The Uniform Probate Code does not concern itself with the rights of persons who were damaged by wrongful death.

It is a further fundamental rule of statutory construction that the unreasonableness of the result produced by one interpretation is reason for rejecting it in favor of another that would produce a reasonable result. In In Re Kay's Estate (1953), 127 Mont. 172, 260 P.2d 391, we refused to follow California's construction of adoption statutes to deprive an adopted child from participating in his natural parent's estate, holding that California's construction was not founded upon right reasoning.

All statutory construction by courts is an attempt to search out the will of the legislature. Did the legislature intend in this case, by an indirect but overwhelming stroke, to cut off forever the time-honored rights of children to recover damages for the wrongful death of their parent? If such was the intent of the legislature in 1974 when the Uniform Probate Code was adopted, it is the best kept secret of the decade. Not a single word was uttered in debate, in the legislature, in the press, or by the legal scholars who proposed or propounded the code, and sponsored it in the legislature and in seminars, that the code severed the rights of such children. Tens of actions for wrongful death damages have been brought by or on behalf of children before and since the adoption of the Uniform Probate Code, and yet no legal writer has sounded the tocsin that a legal upheaval of such earthquake proportions in tort damages actions had occurred.

We choose to rule that such was not the intention of the legislature. In the monumental task of adopting the Uniform

Probate Code, it is remarkable that so few anomalies have occurred. The legislature was careful to guard from conflict the subjects with which the Code was concerned, probate, guardianship and estate proceedings. The Code states:

> "72-1-106. <u>Uniform Probate Code to take precedence</u>. Should any provision of this code conflict with any provisions of other statutes of the State of Montana <u>relating to probate, guardianship or other subjects incorporated in this code</u> and such other statute or statutes was or were adopted prior to the enactment of this code, the provisions of this code shall be deemed to be controlling." (Emphasis added.)

It was the apparent intention of the legislature that the Code should control with respect to its inherent subjects of probate, guardianship and estate matters. It left open the effect on statutes involving other subjects not intrinsic to the Probate Code.

Therefore, until the legislature specifically tells us otherwise, we will recognize the historical right of the issue of a decedent to join with their surviving parent to recover damages in a single wrongful death action to the extent permitted prior to the Uniform Probate Code. We are confident that this is what the legislature intended. To hold otherwise would result in consequences for which only the legislature itself should be directly responsible. In this case, it would wipe out the right of the two minor children involved to recover damages, if the proof shows damages, that they suffered by virtue of the death of their parent. In the worst case example we can think of, if we were to hold otherwise, it is conceivable that minor children would have no right of recovery of any kind for the wrongful death of their bread-winning parent, if both parents were injured in the same tortious accident, and the other parent survived the bread-winner for more than 120 hours.

- 8 -

Other possibilities come to mind, but there is no need to further burden this opinion. The summary judgment against the right of action of the minor children in this case is reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

I concur in the result. As the majority opinion correctly notes, section 27-1-513, MCA, known as the wrongful death statute, has been with us since 1877. At the time of its enactment the decedent's natural children met the statutory definition of heirs. Therefore, it is apparent that legislative intent was that children would be eligible for damages under the language of the wrongful death statute.

When the Uniform Probate Code was enacted in 1974, the intestate succession was changed so that, where there was a surviving spouse, the children did not take. If the wrongful death statute had been considered by the legislature and amended or reenacted following the change in definition of heirs resulting from enactment of the Uniform Probate Code in 1974, then an argument could be made that the legislature intended to change those eligible for benefits under the wrongful death statute. However, such has not been the case here. Since adoption of the Uniform Probate Code the legislature has not considered the wrongful death statute. Adoption of the Uniform Probate Code, with its consequent change in the definition of "heir", could have no effect upon the wrongful death statute without making specific reference to that statute.

I concur in the result for the reason that the definition of "heirs" used in section 27-1-513, MCA, necessarily accords with the statutory definition of heirs in effect at the time of the enactment of the wrongful death statute. That definition included decedent's natural children.

Justice

I concur in the foregoing concurring opinion of Justice Morrison.

Justice

Mr. Chief Justice Frank I. Haswell, dissenting:

I dissent. I cannot subscribe to the philosophy that acts of the legislature will not be enforced at our option until the legislature speaks louder and clearer.

Only the "heirs or personal representatives" of a decedent can maintain an action for wrongful death. Section 27-1-513, MCA. Such has been the law in Montana for over one hundred yars.

The heirs of a decedent, by definition and common law, are those persons "appointed by law to succeed to the estate in case of intestacy," or, stated another way, those "who would receive [the] estate under statute of descent and distribution." Black's Law Dictionary, 4th Ed., p. 854, and cases cited therein. The only Montana statute defining heirs provides:

> "'Heirs' means those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." Section 72-1-103(18), MCA.

By statute, the surviving wife succeeds to the entire estate of her deceased husband where, as here, all the children are issue of both. Section 72-2-202, MCA.

In construing the meaning of statutes, the function of the court is simply to ascertain and declare what in terms or in substance is contained therein and not to insert what has been omitted. Section 1-2-101, MCA; Dunphy v. Anaconda Company (1968), 151 Mont. 76, 438 P.2d 660, and cases cited therein. In interpreting a statute, the court must first look to the plain meaning of the words used and, if its meaning can be thus determined, the court may not go farther and apply any other means of interpretation. Dunphy v. Anaconda Company, supra, and cases cited therein.

-11-

Here, the statutory limitation of wrongful death actions to heirs and personal representatives and the statutory definition of heirs are plain, unambiguous, and certain from the statutory language used by the legislature. We looked at the same statutory language recently and held that nonadopted minor stepchildren of a decedent were not "heirs" under our intestacy laws and accordingly could not maintain a wrongful death action for loss of consortium and support. Versland v. Caron Transport (Mont. 1983), 671 P.2d 583, 40 St.Rep. 1681. Today, the majority have bastardized the same statutory language to achieve what they consider an equitable result.

Accordingly, I dissent.

_____
Chief Justice